**BLUE BIRD BODY COMPANY, INC., and Insurance Company of North America, Plaintiffs,**

v.

**RYDER TRUCK RENTAL, INC., and Liberty Mutual Insurance Company, Defendants.**

Civ. A. No. J74–124(R).

United States District Court, S. D. Mississippi, Jackson Division.

Sept. 21, 1976.

Hassell H. Whitworth, Jackson, Miss., for plaintiffs.

Junior O'Mara, Jackson, Miss., for defendants.

OPINION

DAN M. RUSSELL, Jr., Chief Judge.

In this diversity of citizenship case, the required jurisdictional amount being present, Blue Bird Body Company, Inc., a Georgia corporation, herein called Blue Bird, and Insurance Company of North America, a Pennsylvania corporation, herein called INA, filed this action against Ryder Truck Rental, Inc., a Florida corpora-

tion, herein called Ryder, and Liberty Mutual Insurance Company, a Massachusetts corporation, herein called Liberty, seeking to recover that portion of money damages paid by INA in the settlement of two personal injury actions against Blue Bird and Ryder, paid by their liability carriers, INA and Liberty, respectively, which insurance companies contributed to the settlements equally, INA paying the sum of $42,500.00. Plaintiffs also seek to recover attorney fees and expenses incurred in defending the personal injury suits, in the sum of $5,619.52, for a total claim of $51,474.59. In making the personal injury settlements, INA and Liberty agreed each to pay one half without waiving their rights to litigate the issue of liability as between them.

In their answer the defendants deny any liability and have counterclaimed for that portion of the settlement paid by them in the sum of $42,500.00.

The case was tried to the Court without a jury.

For purposes of the trial the party entered into two stipulations of fact. The first stipulation is quoted as follows:

"1. On or about August 13, 1971 Bluebird and Ryder entered into a written rental or lease contract for the rental of a tractor by Ryder to Bluebird. A copy of the rental agreement may be introduced in evidence by any party.

2. On or about August 14, 1971 a motor vehicle accident occurred in or near Winona, Mississippi. A car owned and being driven by Charles W. Johnson collided with the right rear portion of a semitrailer owned by Bluebird. This semitrailer was attached to the tractor owned by Ryder which was described in the rental contract referred to in paragraph 1 above.

3. Prior to the execution of the aforesaid rental contract, Liberty had issued a certain policy of insurance to Ryder whereby, subject to the terms and provisions of the rental contract and said policy, bodily injury coverage with limits of $100,000–$300,000 was afforded Ryder and renters or lessees of equipment from Ryder, including Bluebird. This policy was in effect on the date of the aforementioned motor vehicle accident. Prior to the execution of the aforesaid rental contract, INA had issued a certain policy of insurance to Bluebird whereby, subject to the terms and provisions thereof, bodily injury coverage with limits of $100,000–$300,000 was afforded Bluebird on trailers owned by Bluebird. This policy was in effect on the date of the aforementioned motor vehicle accident. A copy of either or both of said policies of insurance may be introduced by any party on the trial of this case without the original thereof being produced or the copy being identified. It is specifically understood that under this stipulation none of the parties are stipulating or agreeing that the aforesaid policies afforded coverage for the motor vehicle accident aforesaid, as this is a question or questions for determination by the Court.

4. Thomas Gregg, deceased, was riding as a passenger in the Charles W. Johnson car which was involved in said motor vehicle accident and sustained fatal personal injuries as a result thereof. A suit was instituted in the Circuit Court of Montgomery County, Mississippi, styled *Ida Gregg, Plaintiff, v. Charles W. Johnson, Ryder Truck Rental, Inc., Bluebird Body Company and James Edward Singleton, Defendants,* and was Cause No. 4640 on the docket of said Court, wherein judgment was sought against the defendants for the alleged wrongful death of Thomas Gregg. Bluebird and INA tendered the defense of the case on behalf of Bluebird and Singleton to Ryder and Liberty, and when Ryder and Liberty refused to assume the defense, INA provided the defense of Bluebird and Singleton at the expense of INA. Hassell H. Whitworth represented as attorney Bluebird and James Edward Singleton, and Junior O'Mara represented as attorney Ryder in that suit. A voluntary nonsuit was entered in this case dismissing same as to Ryder Truck Rental, Inc. Thereafter that case was settled by the

payment of the total sum of $35,000 to Ida Gregg individually and as Administratrix of the Estate of Thomas Gregg, Deceased. INA paid one-half thereof, or $17,500, and one-half of the court costs. Ryder and Liberty paid one-half thereof, or $17,500, plus one-half of the court costs. These settlement payments were made with the understanding that the parties to the present litigation or case reserved the right to negotiate and litigate if necessary between themselves at a later date the questions of coverage, the question of which had the duty to defend the case, the duty to pay any settlement or any judgment rendered in said *Gregg* case, and no rights were waived by any parties with regard thereto. It was further agreed that the payment of the sum of $35,000 was a reasonable and fair settlement of the *Gregg* case. Any of the parties hereto may introduce on the trial of this case copies of all or any of the pleadings in the *Gregg* case, including copy of the release executed in consummation of the settlement, without producing or offering the original of said pleadings or release or certified copies of the pleadings.

5. A suit was first instituted in the Circuit Court of Montgomery County, Mississippi by Charles W. Johnson. That case was removed by the defendants to the United States District Court for the Northern District of Mississippi, Western Division. That suit in said Federal District Court was styled *Charles W. Johnson, Plaintiff, v. Ryder Truck Rental, Inc., Bluebird Body Company, and James Edward Singleton, Defendants*, and was Civil Action No. WC72–14(K) on the docket of said Federal District Court. Plaintiff therein sought judgment against the defendants for injuries and damages sustained as a result of the aforesaid motor vehicle accident. Bluebird and INA tendered the defense of the case on behalf of Bluebird and Singleton to Ryder and Liberty, and when Ryder and Liberty refused to assume the defense, INA provided the defense of Bluebird and Singleton at the expense of

INA. Ryder filed motion for summary judgment. An order was entered sustaining said motion, and said suit was dismissed as to Ryder. Hassell H. Whitworth represented Bluebird and James Edward Singleton as attorney, and Junior O'Mara represented Ryder as attorney in said suit. Thereafter, trial of said suit was begun and a settlement agreed on prior to completion thereof. The total sum paid in settlement of the Johnson suit was $50,000 plus court costs in the amount of $250.18. INA paid one-half of said settlement consideration, or $25,000, plus one-half of said court costs, or $125.09. Ryder and Liberty paid one-half of said settlement consideration, or $25,000, and one-half of said court costs, or $125.09. Settlement of the *Johnson* case was made under the same agreement had by the parties hereto with regard to settlement of the *Gregg* case as set forth in paragraph No. 4 hereof. Any of the parties hereto may introduce copies of the pleadings filed in the *Johnson* case, including copy of the release executed in consummation of said settlement, without producing the originals thereof and without having copies of the pleadings certified to. It was further agreed that the payment of the sum of $50,000 was a reasonable and fair settlement of the *Johnson* case.

6. Prior to the settlement of the *Charles W. Johnson* case the deposition of James Edward Singleton was taken. Any party hereto may introduce said deposition, or any part thereof, subject to objection or objections with regard to relevancy or materiality. The original of said deposition need not be offered on the trial of this case, but a copy thereof may be so offered without same being certified to.

7. Johnny Highsmith was not during the month of August 1971, and had not been prior to that time, an employee of Bluebird, but in so stipulating, neither Bluebird nor INA stipulate that Johnny Highsmith was not a permissive user of the vehicle which was the subject of the

lease agreement referred to in paragraph 1 above.

8. When the Charles W. Johnson suit was filed, a controversy arose between INA, Ryder and Liberty with regard to the question of coverage under the aforesaid insurance policies, including the obligation to defend the Charles W. Johnson suit. At that time Hassell H. Whitworth had been employed as attorney in the Charles W. Johnson suit by INA, and Junior O'Mara had been employed as attorney in said suit by Liberty and Ryder. An understanding or agreement was had between said parties and their respective attorneys that all court costs and attorneys' fees would be equally borne or paid by INA paying one-half of same and Ryder and Liberty paying one-half of same which might be incurred up until the time said parties either reached an amicable disposition of the coverage question or concluded that an amicable disposition of the coverage question could not be worked out or resolved. This understanding was not a waiver of any rights of said parties with regard to the coverage question. As of October 13, 1972, INA, Liberty and Ryder reached the conclusion the coverage question or questions could not be amicably resolved. Thereupon Hassell H. Whitworth submitted a bill for services rendered and expenses incurred in the total amount of $1,395.12, and Junior O'Mara submitted a statement for services and expenses in the amount of $2,626.44. These statements totaled $4,021.56. INA paid one-half of said statements and Ryder paid one-half thereof. Thereupon the agreement or understanding set forth in this paragraph was terminated."

The second stipulation is quoted as follows:

"1. The attorney fee charged by Hassell H. Whitworth to INA, and which is one of the items sued for herein, is a reasonable charge for services rendered by him.

2. Endorsement No. 20 appearing on Liberty policy No. LC1-751-001715-049, which policy was in effect on the date of this loss, first appeared in policy No. LSL-001715-041 issued by Liberty to Ryder which policy was effective January 1, 1961-62 and has been a part of each policy thereafter issued by Liberty to Ryder which said policies are listed in the answer to Interrogatory No. 3 previously propounded by plaintiffs to defendants. It is understood that by the making of this stipulation the defendants herein do not stipulate or agree that evidence pertaining to policies issued by Liberty to Ryder prior to the effective date of policy No. LCL-751-001715-049 is admissible on the trial of this case or that this stipulation is admissible as a stipulation or evidence on the trial of this case.

3. Endorsement No. 55 on policy No. LCL-751-001715-049 was issued in April 1970. This endorsement has typed thereon the effective date as being 1-1-70 but this is a typographical error as said date should have been typed 1-1-69. Endorsement No. 65 attached to the last numbered policy was issued May 29, 1970.

4. Plaintiffs have heretofore propounded interrogatories to defendants which defendants have answered. Interrogatory No. 5(c) is limited to said Endorsement No. 55, as is the answer thereto. It is stipulated that said Interrogatory No. 5(c) applies to said Endorsement No. 65 and the answer previously given to Interrogatory No. 5(c) applies with regard to Endorsement No. 65."

The accident which gave rise to the Gregg and Johnson suits involved a tractor-truck owned by Ryder, and rented by Blue Bird to haul a Blue Bird trailer. The combined rig was on a mission for Blue Bird delivering Blue Bird metal body parts from its plant at Fort Valley, Georgia, to a Blue Bird plant at Mt. Pleasant, Iowa. Blue Bird normally used its own tractor-trucks, but, when one was not available for this trip, hired one from Ryder under a rental contract. Blue Bird also needed a driver for the trip. Ryder recommended James Edward Singleton, who, for the purposes of the trip, was an employee of Blue Bird, although Ryder's account manager at its

Macon, Georgia, terminal checked out Singleton's qualifications to drive a Ryder truck, checking his drivers license, and giving him an eye and road test. Singleton signed the rental contract on behalf of Blue Bird, drove the tractor from Macon to Blue Bird's plant at Fort Valley, and hitched on the loaded Blue Bird trailer, leaving there around noon on August 13, 1971. About ten miles north of Fort Valley, he picked up a friend, Johnny Highsmith, at a filling station by Byron, Georgia, with Highsmith driving from there through Atlanta, Georgia, and as far as Birmingham, Alabama. They did not follow their intended route from Birmingham through Tennessee, which would have by-passed Mississippi. Instead they entered Mississippi from the east on Highway 82. Singleton, who was then driving, intended to head north on Interstate 55 for Memphis, Tennessee, by descending a ramp from Highway 82 which over-passed I–55. He missed the turn and continued west a short distance until he could make a U-turn, and descend a ramp leading to Interstate 55 south. As he entered the ramp, Highsmith suggested that Singleton stop and back out of the ramp on to Highway 82, in order to go east on Highway 82, where they could make another U-turn and enter the ramp leading to Interstate 55 north. Singleton stopped, and Highsmith took over the rig to back it while Singleton went to the back of the trailer to watch for traffic approaching from the west. This was about 4:00 a. m. on the morning of August 14, 1971. Just as the rear of the trailer entered some five or six feet into the south or outer east bound lane of Highway 82, Singleton saw the head lights of an approaching car and called to Highsmith to go forward. Before Highsmith could do so, the vehicle containing Gregg and Johnson struck the right rear of the trailer. Gregg ultimately died from his injuries, and Johnson was severely injured. Gregg's mother, his sole heir at law, and Johnson filed suits against Blue Bird, Singleton and Ryder, with Gregg's suit also including Johnson as a defendant. After the Gregg suit was settled, and, during the process of settling Johnson's suit, it was

first learned that Highsmith was actually at the wheel of the tractor-trailer rig instead of Singleton.

In the Gregg and Johnson litigation against Ryder, Blue Bird and Singleton, Ryder's liability insurer, Liberty, declined to defend on behalf of Ryder. However, as stated above, both INA and Liberty contributed equally to the payment of the amounts in settlement and the court costs. In the present suit, INA and Blue Bird essentially claim that Ryder agreed in the rental contract to provide liability insurance on the tractor, and that INA's coverage, under the "other insurance" clause, was excess with respect to Liberty's coverage which was primary. Plaintiffs further claim that endorsements in Liberty's policy purporting to eliminate all coverage for its tractor while leased to Blue Bird are lacking in consideration and hence void.

In view of the fact Liberty offered liability coverage on the tractor owned by Ryder, and INA offered similar coverage on the trailer owned by Blue Bird, it is expedient for the Court to examine the omnibus clauses in both policies pertaining to both pieces of equipment when combined into one vehicle and used on a trip for Blue Bird, before considering the effect of the rental contract and the endorsements in the Liberty policy.

In the INA policy the unqualified word "insured" includes the named insured and also includes any person while using an owned or hired automobile, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply: "(a) with respect to an automobile while used with any trailer owned or hired by the insured and not covered by like insurance in the company; or with respect to a trailer while used with any automobile owned or hired by the insured and not covered by like insurance in the company."

The Liberty policy similarly defines an insured as the named insured and any other person while using an owned or hired auto-

mobile with the permission of the named insured, provided the operation is within the scope of said permission. Excluded from an "insured" is any person or organization, other than the named insured, with respect to: (1) a motor vehicle while used with any trailer owned or hired by such person or organization and not covered by like insurance in the company, or (2) a trailer while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the company; . . .".

Under both policies the word "automobile" includes a land motor vehicle or a trailer.

The Court tracks the INA language pertaining to exclusions referred to above as they apply to the facts of this case thusly: With respect to a tractor owned by Ryder, while used with a trailer, owned or hired by an insured other than Blue Bird, not covered by like insurance, the exclusion is effective. As the tractor was used with a trailer owned by the named insured, Blue Bird, the exclusion does not apply. Likewise, with respect to a trailer, owned by Blue Bird, while used with a tractor owned or hired by the insured, other than Blue Bird, and not covered by like insurance, inasmuch as the trailer, owned by Blue Bird, was used with a tractor hired by the named insured, Blue Bird, this exclusion is not effective.

Turning to a similar tracking of the exclusions in the Liberty policy in which Ryder is the named insured, there is an exclusion of coverage with respect to a tractor while used with any trailer owned or hired by the insured other than the named insured, in this case, Ryder. Ryder neither owned the trailer nor hired it. Hence this exclusion is effective. Similarly, there is an exclusion with respect to a trailer, Blue Bird's, while used with a tractor owned or hired by an insured other than the named insured, Ryder. Ryder owned the tractor; hence this exclusion is also effective.

Despite these exclusions, the Liberty policy contained Endorsement No. 20, first appearing in its coverage extended to Ryder on January 1, 1961, which has been a part of each policy thereafter issued to Ryder, including the policy in effect at the time of the accident. The material parts of this endorsement read as follows:

"It is agreed that such liability insurance as is afforded by the policy, including the Exclusions and Conditions applicable thereto, for bodily injury liability under Coverage C . . . applies to any one or more persons or organizations leasing/renting an automobile from any named insured . . ., subject to the following provisions:

1. . . .

2. Unless the lease/rental agreement states in writing that such lessee/rentee is to be provided with automobile liability insurance by such named insured, no insurance shall be afforded under this policy to such lessee/rentee, his agents or employees, or to any persons or organization legally responsible for the use of the vehicle so leased/rented by such lessee/rentee.

3. In addition to the other terms of this policy, the insurance afforded to such lessee/rentee, his agents or employees, or to any person or organizations legally responsible for the use of an automobile so leased/rented by such lessee/rentee shall also be subject to the terms, including any limit or limits of liability, conditions, restrictions, and limitations in the lease/rental agreement, providing the company's understanding under this policy is not thereby enlarged or extended.

4. The insurance afforded to such lessee/rentee applies only to the maintenance or use of (1) the automobile so leased/rented and (2) trailers owned by the lessee/rentee for which he is legally liable, but only while such trailer is attached to the leased/rented automobile referred to in part (1) of this sub-paragraph.

NOTE. 'The insurance under part (2) of this sub-paragraph applies subject to the provisions of Condition 6, Other Insurance, of the policy.'

5. . . .".

Condition 6 "Other Insurance" provides:

"The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess, or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable provision below:

(a) Contribution by Equal Shares . . . .".

The language under "(a) Contribution by Equal Shares", provides a formula for contribution by equal shares if all other valid and collectible insurance provides for contribution by shares. If all other valid and collectible insurance does not provide for contribution by shares, then another manner by which Liberty would contribute to a loss is provided. The Court does not cite this language verbatim, as it is not necessary to the Court's ultimate findings herein.

Paragraph 4 on the reverse side of the rental contract entered into by and between Ryder and Blue Bird provides, in part, as follows:

"4. The Vehicle is covered by an automobile liability insurance policy, a copy of which is available for inspection at the main offices of the Owner upon request by Renter; and Renter being an assured under said policy, agrees to comply with and be bound by all the terms, conditions, limitations, and restrictions thereof . . .".

Paragraph 5 of the rental contract provided that Blue Bird could provide liability insurance with Ryder as a named insured if Blue Bird so indicated on the face of the contract. In the space provided therefor, neither Singleton nor Blue Bird indicated Blue Bird would furnish such insurance.

Ryder's plant manager at Macon agreed that Ryder was to furnish the insurance. However, he was not aware of the subsequent endorsements to the Ryder policy.

Despite the effect of the exclusions in the omnibus clause of the Liberty policy, and, in the light of the above recited portion of the rental contract, the Court, if there were no other endorsements to the policy, would be constrained to construe Endorsement No. 20 as an acceptance of primary insurance coverage by Liberty for Ryder's tractor while rented by Blue Bird and attached to Blue Bird's trailer, unaffected by Liberty's "Other Insurance" clause except to the extent of the contribution that would be applicable.

However, on January 1, 1969, effective to January 1, 1972, Endorsement No. 55 was added to the policy. This endorsement reads as follows:

"It is agreed that the wording under Section 4 NOTE on Endorsement No. 20 is eliminated and replaced by the following:

"NOTE: The insurance under part (2) of this sub-paragraph is excess over any other valid and collectible insurance the insured may have whether such coverage is on a primary, excess or contingent basis.

NOTE: The insurance under part (2) does not apply if the insured has any other insurance whether on a primary basis, excess or contingent basis."

These notes are contradictory on their face. In order to correct the contradiction, Endorsement No. 55 was followed by Endorsement No. 65, effective May 29, 1970, eliminating the second note in Endorsement No. 55, leaving applicable the provision that insurance extended to a lessee/rentee of a trailer owned by the lessee/rentee for which he is legally liable, but only while such trailer is attached to the leased/rented automobile, is excess insurance.

The word "insured" as used in the first note to Endorsement No. 20, which was not eliminated, apparently refers to Blue Bird, and, under Paragraph 4 of Endorsement No. 20, Blue Bird stood in the shoes of a

named insured to whom only excess coverage under the Liberty policy was extended.

Be that as it may, inasmuch as the total of the two settlements were within the INA coverage, the defendants contend they are not liable in any amount.

■ The Court agrees with the contention of the defendants that Endorsements Nos. 55 and 65 were not invalid for lack of a consideration. The Supreme Court of Mississippi in *Ellis v. Southern Farm Bureau Casualty Insurance Co.* (1958), 233 Miss. 840, 103 So.2d 357, cited by the defendants, has adopted the rule that forbearance from cancelling a policy of insurance is sufficient consideration to support an endorsement. This rule was followed in *U. S. F. & G. Co. v. Mathis* (1970), Miss., 236 So.2d 730, also cited by defendants.

■ Although the Court finds no merit in plaintiffs' contention that the endorsements were invalid, plaintiffs further contend that Ryder, in Paragraph 4 of its lease contract, the pertinent part being quoted above, warranted that the rented tractor was covered by a liability insurance policy, which policy, although subject to inspection by Blue Bird, was located in Ryder's main offices in Miami, hundreds of miles from its plant at Macon, Georgia, and that Blue Bird had no opportunity to inspect same, nor did Ryder's employees at Macon advise Blue Bird of the coverage as limited by Endorsements Nos. 55 and 65. The Court would be somewhat receptive to this argument, but for other conditions of the rental contract which Blue Bird breached.

In Paragraph 4 providing coverage for the rented tractor, Blue Bird, as the renter, agreed to be bound "by all the terms, conditions, limitations, and restrictions" in the policy. More important, in Paragraph 1(c) of the rental contract, Blue Bird warranted that the tractor would not be operated by any person other than the Renter, his employer, or any person regularly employed by such Renter. This warranty was followed by: "Operation of the Vehicle by Renter, his employee, agent or any other authorized person, in violation of the use and driver restrictions or Renter's warranties is expressly prohibited."

Paragraph 2 provides: "Renter agrees to notify Owner of any change of driver and to arrange for Owner to safety check any such additional driver."

As related above, although Singleton was not a regularly employed driver for Blue Bird, he was known to Ryder's account manager in Macon, who checked out Singleton's qualifications by examining his license, and giving him an eye test and road test.

Although Johnny Highsmith was unknown to Blue Bird, his operation of the rig, at the time of the accident, was a breach of Blue Bird's express warranty that the rig would not be driven by anyone other than a Blue Bird employee who had been checked by Ryder. Although the policy of permissive use of motor vehicles is increasingly being broadened to include an implied permission, particularly among members of a family who in turn permit others to use an otherwise insured vehicle, here there was as an express condition of the contract, a warranty, that no one but Singleton drive the tractor-trailer on its mission to Iowa and return to Georgia. Although the Court has found no Mississippi case construing this type of rental contract, the Court is confident that the Mississippi courts would treat this contract "according to the usual rules of law applicable to contracts" (see *Ellis* cited above), and would find that at the time of the accident, when Highsmith was at the wheel of the rig, a material condition of the contract was breached.

For the reasons given herein, the Court finds that plaintiffs' cannot recover on their action against Ryder and Liberty, and that Ryder and Liberty should recover on their counter-claim against Blue Bird and INA the sum of $42,500.00 paid in settlement of the Gregg and Johnson lawsuits, the court costs paid by Ryder and Liberty therein, and costs of court in this action.

An order or orders shall be submitted to the Court within the time provided for in the rules of this Court.